IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **LEWIS BROOKS MCKENZIE,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-CV-00371-O-BP |
| | § | |
| **STATE OF TEXAS,** *et al.,* | § | |
| *Defendants.* | § | |

### STATE OF TEXAS' MOTION FOR REMAND

TO THE HONORABLE REED C. O'CONNOR:

COMES NOW, the State of Texas[1] ("Texas") Movant, and files this Motion to Remand. In support thereof, the State Parties would respectfully show the Court the following:

**I.
NATURE AND STAGE OF THE PROCEEDING**

On November 5, 2016, Kelli Marie McKenzie ("Ms. Kelli"), also known as Kelli Marie Rayburn, filed a petition for divorce against Lewis Brooks McKenzie ("McKenzie"). (ECF No. 1, page 44). Since that time, McKenzie has been litigating his divorce proceedings alongside his child custody and/or child support in state court. (ECF No. 1, pages 48-69). McKenzie has been litigating this matter in state court for over 4 years.

Six days before removal, McKenzie was informed that he was scheduled for a court hearing so that he and Ms. Kelli could try to work out a legal order regarding child support, medical

---

[1] McKenzie incorrectly identifies the "State of Texas" as a party in the litigation. (ECF No. 1, page 14, ¶ 5). McKenzie is in error. (ECF No. 1, page 60 identifying parties in the state court proceeding as Lewis Brooks McKenzie and Kelli Marie McKenzie). At no point is the State of Texas a party in the state court litigation, and accordingly, the State of Texas is not properly before this Court. McKenzie is even mistaken in stating that Kelli Marie McKenzie is the defendant in this removal, as in the original state action Kellie Marie McKenzie is the Petitioner while McKenzie is the Respondent. (ECF No. 1, page 60).

support, and a parenting time plan for their child. (ECF No. 1, page 57). McKenzie now seeks to avoid a state court hearing regarding child support, medical support, and a parenting time plan as well as possible unpaid child support **by filing his removal one day before the state court hearing**. (ECF No. 1, page 53–57).

This case should be remanded back to state court because McKenzie failed to satisfy the two-pronged test for removal under §1443(1).

McKenzie should not be allowed to manipulate the legal system at the expense of children who are the subject of the ongoing state court proceedings.

## II.
## STATEMENT OF THE ISSUES

Remand to state court is appropriate because the statute on which McKenzie bases his attempt to remove does not apply to his case, and because this Court lacks subject matter jurisdiction over the state court litigation.

1. The case must be remanded to state court because McKenzie's removal does not satisfy the *Rachel* two-pronged test for removal under § 1443(1). *See Johnson v. Mississippi*, 421 U.S. 213, 219, 95 S. Ct. 1591 (1975) (quoting *Georgia v. Rachel*, 384 U.S. 780, 86 S. Ct. 1783 (1966)). McKenzie fails to show that the right allegedly denied "arises under federal law 'providing for specific civil rights stated in terms of racial equality.'" *Id.*

2. The Domestic Relations Exception bars extension of federal jurisdiction in this case because McKenzie is attacking the validity and calculation of child custody and child support orders. *Gross v. Dannatt*, 736 F.App'x. 493, 495 (5th Cir. Sept. 5, 2018) (per curiam).

3. The *Younger* doctrine requires federal courts to abstain where: (1) the dispute involves an "ongoing state judicial proceeding," (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings must afford an adequate opportunity to raise constitutional challenges. *Wightman v. Tex. Supreme Ct.*, 84 F.3d 188, 189 (5th Cir. 1996). It is undeniable that McKenzie is trying to disrupt ongoing enforcement actions in state court.

4. In the alternative, to the extent that McKenzie complains of state court judgments and matters that are not ongoing (and thus barred by the *Younger* doctrine), the *Rooker-Feldman* doctrine bars this court from entertaining collateral attacks on state court judgments. *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994). "If the district court is confronted with issues that are 'inextricably intertwined' with a state judgment, the court is 'in essence being called upon to review the state-court decision,' and the originality of the district court's jurisdiction precludes such a review." *Id*.

### III.
### SUMMARY OF ARGUMENT

This case should be remanded back to state court because 28 USC § 1443 has specific requirements that McKenzie does not meet. Additionally, consideration of McKenzie's claims in this litigation are not within the subject matter jurisdiction of this Court, as the Domestic Relations Exception, the *Younger* abstention doctrine and the *Rooker-Feldman* doctrine bar the exercise of that jurisdiction.

## IV.
## MOTION TO REMAND

**A.    Removal under 28 U.S.C. § 1443 is Not Authorized in this Litigation.**

As noted above, McKenzie removed this case pursuant to the civil rights removal statute, 28 U.S.C. § 1443. (ECF No. 1, p. 4: "This very special type of removal under Section 1443…"; ECF No. 6). That statute authorizes the removal of a civil rights action pending in state court, even if the action would not otherwise be removable under the federal court's original jurisdiction. Under that statute, a party can only remove a case:

> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of the citizens of the United States, or of all persons within the jurisdiction thereof; or
>
> (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

28 U.S.C. § 1443. McKenzie has not alleged that he is a "federal officer or agent," so he can only seek to predicate removal on the first subsection.[2]

**1.  McKenzie Has Failed to Allege Rights in Terms of Racial Equality**

Under § 1443(1), the vindication of "federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." *Smith v. Winter*, 717 F.2d 191, 194 (5th Cir. 1983) (citing

---

[2] The second subsection of § 1443 "confers a privilege of removal *only* upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." *City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 824 (1966) (emphasis added).

*Peacock*, 384 U.S. at 828). Section 1443(1) "has consistently been construed narrowly to require strict satisfaction of both the 'civil rights' element and the 'enforcement' element intrinsic within it." *Winter*, 717 F.2d at 194.

Under 28 U.S.C. § 1443(1), a defendant must satisfy a two-pronged test to remove an action. *Georgia v. Rachel*, 384 U.S. 780 (1966). The *Rachel* test mandates that to gain removal to federal court under 28 U.S.C. § 1443(1), McKenzie must show both that (1) the right allegedly denied to him arises under a federal law providing for specific rights stated in terms of racial equality; and (2) McKenzie is denied or cannot enforce the specified federal rights in the state courts due to some formal expression of state law. *Texas v. Gulf Water Benefaction Co.*, 679 F.2d 85, 86 (5th Cir. 1982) (citing *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975)). This civil rights removal statute provides a scenario for removal where a statutory scheme will deny a federal right if the case remains in state court; not discrimination allegedly resulting from maladministration. *Student Non-Violent Coordinating Committee v. Smith*, 382 F.2d 9, 13 (5th Cir. 1967). Removal is proper under § 1443(1), for example, where a defendant is charged under a state trespass statute for refusing "to leave facilities of public accommodation, when ordered to do so solely for racial reasons." *Rachel*, 384 U.S. at 805. In that situation, "the mere pendency of the prosecution[ ] enables the federal court to make the clear prediction that the defendant[ ] will be 'denied or cannot enforce in the courts of (the) State' the right to be free of any 'attempt to punish' them for protected activity." *Id*. (quoting *Hamm v. City of Rock Hill*, 379 U.S. 306, 85 S.Ct. 384 (1964)).

Indeed, the Fifth Circuit reaffirmed the requirement that a removing party "allege that he was denied or unable to enforce rights under any law providing for equal civil rights stated in terms of racial equality." *Kruebbe v. Beevers*, 692 F.App'x 173, 175-76 (5th Cir. 2017); *see also McMullen v. Cain*, 726 F.App'x 257, 258 (5th Cir. June 13, 2018). In the absence of such specific

allegations, "[section] 1443(1) did not apply" to Kreubbe's case, and the case was remanded to state court. *Kruebbe*, at 176.

### 2. McKenzie Does Not Satisfy the *Rachel* Test

Despite McKenzie's actual, demonstrated knowledge of this requirement (ECF Nos. 11, 14), Plaintiff seeks removal under § 1443 without meeting the *Rachel* test and contends that this Court should disregard Supreme Court precedent. (ECF No. 14).

Indeed, McKenzie describes *Rachel* as one of the "'seminal triplet' cases upon Section 1443 removals." (ECF No. 9, page 4). The other cases also require that the denial of rights be state in terms of *racial* equality. *Johnson*, 421 U.S. at 219, *Peacock*, 384 U.S. at 824-25.

In this Notice of Removal, McKenzie argues that in the State Court, he has been "denied basic constitutional and due process" (ECF No. 1, ¶ 24) and equal protection, equal privileges and immunities, and gender discrimination. (ECF No. 1, ¶ 24).

Notably, McKenzie does not identify any specific actions by the Court to him, or any actions performed by anyone to him which he suggests resulted in denial of his rights. Instead, McKenzie's removal is littered with arguments apparently unrelated to his own child support and child custody case, such as a diatribe on the termination of parental rights (ECF No. 1, pp. 7-8), human trafficking and foster care (ECF No. 1, pp. 5-7), and wholly conclusory (and incorrect) statements about which of his rights have been violated. (ECF No. 1).

The broad constitutional claims raised by McKenzie do not satisfy the first prong of the *Rachel* test. *See State of Ga. v. Spencer*, 441 F.2d 397, 398 (5th Cir. 1971) (due process); *Smith v. Winter*, 717 F.2d 191 (5th Cir. 1983) (equal protection); *see also Alabama v. Huffaker*, No. 08–680, 2009 WL 197806, at *2 (S.D. Ala. Jan. 26, 2009) (pro se defendant alleging denial of equal protection and due process in a child support proceeding "failed to allege adequate grounds for

removal pursuant to § 1443(1), because he cannot satisfy the first prong of the test").

Because McKenzie does not meet the *Rachel* test for removal, this case should be remanded to state court. The Fifth Circuit, considering state court litigants who have recently attempted to use the same pleadings to remove child support or child custody proceedings to federal court, uniformly reached the same conclusion. *See, e.g.*, *McMullen*, 726 F. App'x at 258 ("As McMullen concedes, his claims in this case do not arise under a federal law pertaining specifically to racial equality, yet he asks that we disregard the Supreme Court's construction of § 1443(1) as error. This we cannot do."); *Sanders v. Wright*, 734 F.App'x 303, 304 (5th Cir. 2018) (finding "Wright's challenge to the remand order is frivolous" and warning him against filing "future frivolous filings"); *Womack v. Wright,* 683 F.App'x 271 (5th Cir. 2017).

Additionally, there are many district court opinions[3] finding the same result. These removals all appear ghost-written by the same author. It is readily apparent that one author wrote a template[4] for all of these removal filings, regardless of in which litigation they appear, as

---

[3] In addition to the district cases for *McMullen*, *Sanders*, and *Womack*, *see Gee v. Texas*, No. 3:18-CV-2681-G-BN, 2018 WL 6991039, at *1 (N.D. Tex. Dec. 10, 2018), *report and recommendation adopted*, No. 3:18-CV-2681-G (BN), 2019 WL 162909 (N.D. Tex. Jan. 10, 2019); *Womack v. Wright*, No. 4:18-CV-567, 2019 WL 430914, at *3 (E.D. Tex. Feb. 4, 2019); *Robinson v. Texas*, No. 4:18-CV-66, 2018 WL 4057192, at *5 (E.D. Tex. Aug. 27, 2018); *Miller v. Dunn*, No. 3:18-CV-1457-B-BH, 2018 WL 3216062, at *5 (N.D. Tex. June 13, 2018), *report and recommendation adopted*, No. 3:18-CV-1457-B-BH, 2018 WL 3207417 (N.D. Tex. June 29, 2018), *appeal dismissed sub nom. Miller v. State*, No. 18-10897, 2018 WL 7046625 (5th Cir. Nov. 21, 2018) (pet. filed); *Parris v. Parris*, Cause No. 4:17-CV-504, 2017 WL 5184567 (E.D. Tex. Nov. 9, 2017); *Janosek v. Gonzalez*, Cause No. 2:17-CV-111; 2017 WL 3474104 (S.D. Tex. Aug. 11, 2017); *Morrow v. McFarling, et al.*, Cause No. 4:15-CV-747, 2017 WL 6452826 (E.D. Tex. Dec. 12, 2017).

[4] These litigants are readily identifiable not only for the meritless removals under § 1443, but by the specific filings they make in attempting to do so. *Sanders v. Wright*, 2017 WL 3599536 at *5, n. 1 (noting "the eight separate 'Notices' are as follows: (1) Petitioner's Notice of Judicial Disqualifications (Dkt. No. 6); (2) Notice Distinguishing Between the Two Basic Types of Removal; and Motion for Issuance of Preliminary Relief in the Alternatives (Dkt. No. 7) ;(3) Notice of Special Pro Se Litigant Rights (Dkt. No. 8); (4) Notice of Pending Amendment of

apparent by McKenzie's arguments as to why he should be allowed to remove as a plaintiff, even though he is a defendant in his state court proceedings. (ECF Nos. 11, 14) This also explains the lack of any case specific facts in McKenzie's pleading. Even his own "Affidavit of Lewis Brooks McKenzie on Widespread Corruption" does not identify any specific actions in his state court proceeding prior to removal, but only a broad attack on the state-wide family court system. (ECF No. 3).

These litigants have been uniformly unsuccessful because they, like McKenzie, do not satisfy the first prong of the *Rachel* test, which is mandatory for removal in this case.

**B.     McKenzie's Removal is Barred by the Domestic Relations Exception to a Federal Court's Jurisdiction**

This "case is also subject to dismissal under the domestic relations exception to federal jurisdiction." *McMullen*, 2016 WL 4548481, at *2; *Janosek*, 2017 WL 3474104 at *3; *Baker v. Swindall*, No. A-16-CV-1155-RP, 2016 WL 6520069, at *2 (W.D. Tex. Nov. 3, 2016).

This Court, under the Domestic Relations Exception to federal jurisdiction, is not the appropriate forum to address Plaintiff's claims. *See Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1 (2004), ("So strong is our deference to state law in this area that we have recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees,' "), *citing Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). A litigant may not circumvent the Domestic Relations Exception and seek federal resolution of a state court

---

Petition into Complaint (Dkt. No. 9); (5) Notice of Pre-emptive Constitutional Challenge to the Unlawful Discrimination of Separate Racial Classes via *Georgia v. Rachel* (Dkt. No. 10); (6) Notice of Constitutional Question to EDTX Local Rule CV-81 (Dkt. No. 12); (7) Notice of Constitutional Questions to Texas State Statutory Schemes (Dkt. No. 13); and (8) Notice of Constitutional Questions to Federal Statute 28 U.S.C. § 1443 (Dkt. No. 14). Mr. Wright also filed a Memorandum of Law Clarifying Established Federal Jurisdiction, making clear his removal was filed pursuant to 28 U.S.C. § 1443 (Dkt. No. 5 at 5)."). Notably in this case, McKenzie has filed all the "Notices" in *Wright*, other than that pertaining to a Local Rule of the Eastern District. (ECF No.s 1-12, and 13).

domestic matter by filing a complaint in the "lower federal courts 'cast in the form of civil rights suits.' " *Hale v. Harney*, 786 F.2d 688, 690-91 (5th Cir. 1986) (internal citations omitted).

Although this is ordinarily applicable to diversity cases, the Fifth Circuit has applied it to federal jurisdiction cases where "claims for relief ... require the court to issue [ ] 'divorce, alimony, or child custody decrees,' " *Gross v. Dannatt*, 736 F. App'x 493, 495 (5th Cir. Sept. 5, 2018) (per curiam).

In this case, McKenzie refers to the state court proceeding as "[t]he instant state court 'child custody case'" (ECF No. 1, page 28, ¶ 51). McKenzie is asking this Court to review the state court child support and child custody orders (ECF No. 1, pages 10-11) and enforcement order (ECF No. 1, pages 17-18 and 32) and determine the validity of those orders. (ECF No. 1, page 17, ¶ 16: "there has never been any valid authority by any court to order me to pay "child support"; page 33, ¶ 67: complaining about enforcement of child support arrears through liens). McKenzie specifically references the "the instant 'child support orders' illegally created within Travis County courts by Travis County judges" as the basis for his action. (ECF No. 1, page 30 ¶ 58). McKenzie specifically "prays this Court issue a declaratory judgment finding that the original state court proceedings now removed were void." (ECF No. 1, page 38). He also asks for reimbursement of monies taken "via ostensible orders for child support." (ECF No. 1, page 39 ¶ 96).

The basis for McKenzie's actions is his theory that the child custody and child support orders themselves should be reviewed, and that the reason that the enforcement actions should be enjoined is because the original orders for custody and support should not have been issued. As hard as he tries to avoid the Domestic Relations exception by using synonyms for orders of the family court, he cannot in good faith suggest that the Court reach his conclusion without determining the parental rights that McKenzie has, or how much support should be paid, and under

which conditions, determinations that are barred by the Domestic Relations exception. *See Rykers v. Alford*, 832 F.2d 895, 900 (5th Cir. 1987).

In fact, a plaintiff may not seek a reversal in federal court of *any* state court judgment simply by casting his complaint in the form of a civil rights action. *See Reed v. Terrell, et al.*, 759 F.2d 472, 473 (5th Cir. 1985); *see also Hagerty v. Succession of Clement*, 749 F.2d 217, 220 (5th Cir. 1984). "When 'constitutional claims presented [in federal court] are inextricably intertwined with the state court's grant or denial of relief,' the federal court should not entertain the claims." *Eitel v. Holland*, 798 F.2d 815, 818 (5th Cir. 1986) (quoting *Hale*, 786 F.2d at 691) (internal citations omitted).

As a matter of law, this Court should abstain from entertaining McKenzie's claims, and remand this matter to state court.

C.  **This Court's Exercise of Jurisdiction is Barred by the *Rooker-Feldman* Doctrine, or in the alternative, the *Younger* doctrine**

McKenzie attacks the previous state court orders, while simultaneously attempting to preclude current litigation based on those orders by suggesting they are not valid. In either case, this Court may not exercise jurisdiction over this case as a matter of law and should remand it to state court.

1. **The *Rooker-Feldman* Doctrine**

The *Rooker-Feldman* doctrine[5] bars a federal court from entertaining collateral attacks on state court judgments. *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994). "If the district court is confronted with issues that are 'inextricably intertwined' with a state judgment, the court

---

[5] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923) (the jurisdiction of the District Court "is strictly original"); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 & 482 (1983) ("a United States District Court has no authority to review final judgments of a state court in judicial proceedings").

is 'in essence being called upon to review the state-court decision,' and the originality of the district court's jurisdiction precludes such a review." *Id*. (citing *Feldman*, 460 U.S. at 482).

Although he does not identify the specific state court proceedings, it is apparent from McKenzie's pleadings that his claims arise directly from judicial decisions in state court. McKenzie explicitly complains about "the instant 'child support orders' illegally created within Travis County courts by Travis County judges." (ECF No. 1, page 30 ¶ 54). McKenzie also clearly attacks the validity of state court orders regarding child support (ECF No. 1, page 18, ¶ 16: "there has never been any valid authority by any court to order me to pay 'child support' ").

It is obvious that McKenzie is asking this Court to review the state court decisions. At a minimum, this litigation is "inextricably intertwined" with the state court judgments. Accordingly, pursuant to the *Rooker-Feldman* doctrine, this court lacks jurisdiction to consider Plaintiff's collateral or direct attack on state court decisions and judgments. *Shepherd*, 23 F.3d at 924.

**2. The *Younger* Abstention Doctrine**

To the extent that McKenzie is seeking to prevent the state court from exercising its authority in the enforcement of its orders, the Court would still be without jurisdiction under the *Younger* abstention doctrine. The Fifth Circuit has held that the *Younger* doctrine requires federal courts to abstain where: (1) the dispute involves an "ongoing state judicial proceeding," (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings must afford an adequate opportunity to raise constitutional challenges. *Wightman v. Tex. Supreme Ct.*, 84 F.3d 188, 189 (5th Cir. 1996).

In seeking to remove a matter to federal court (ECF No. 1), it is clear that there is an "ongoing state judicial proceeding."

As a matter of law, family and child custody issues are important state interests. *See Moore v. Sims*, 442 U.S. 415, 434, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) ("Family relations are a traditional area of state concern."); *see also Shipula v. Tex. Dep't. of Family Protective Servs.*, No. H–10–3688, 2011 WL 1882512, *9 (S.D. Tex. May 17, 2011) (citing *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir.1978); *Jagiella v. Jagiella*, 647 F.2d 561, 564 (5th Cir.1981) ("[A]pplication of the *Younger* Abstention Doctrine to domestic relations cases is obvious and proper.")).

For the third prong of the test, to overcome the presumption in favor of abstention, McKenzie must show that he had *no opportunity* to litigate the federal issue in state court. *DeSpain v. Johnston*, 731 F.2d 1171, 1178 (5th Cir. 1984). As a matter of law, "Texas law is apparently as accommodating as the federal forum .... [A]bstention is appropriate unless state law *clearly bars the interposition of the constitutional claims*." *Moore*, 442 U.S. at 425-26 (emphasis added).

Finally, in implementing the *Younger* policy of non-interference, federal courts must focus upon the practical impact of any potential ruling. *See Ballard v. Wilson*, 856 F.2d 1568, 1570 (5th Cir.1988). Accordingly, the Fifth Circuit has stated that "we cannot ignore the fact that any injunction or declaratory judgment issued by a federal court would affect the course and outcome of the pending state proceedings." *Id*. at 1570. McKenzie is plainly trying to prevent the state court from making rulings or performing the basic functions of the judiciary.

Accordingly, this Court should abstain from considering McKenzie's litigation and remand it to state court.

## V.
## CONCLUSION

This Court should remand this litigation back to state court for the reasons presented hereinabove.

WHEREFORE, the State of Texas prays that McKenzie take nothing, and that the State of Texas recover all such other and further relief, special or general, at law or in equity, to which it is justly entitled, including but not limited to costs incurred herein.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief for General Litigation Division

*/s/ Martin Arroyo Jr.*
**MARTIN ARROYO JR.**
Texas Bar No. 24133114
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120| Fax: (512) 320-0667
martin.arroyo@oag.texas.gov
**Attorney for Defendant**

## CERTIFICATE OF CONFERENCE

I certify that the office of the undersigned conferred with Plaintiff on **May 19, 2023 by phone**, at **10:38 a.m**. regarding this Motion to Remand prior to filing this document. Plaintiff is opposed to the granting of the Motion to Remand.

                                          */s/ Martin Arroyo Jr.*
                                          **MARTIN ARROYO JR.**
                                          Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served through the electronic case manager and sent *via U.S. certified mail, return receipt requested*, and first-class mail on May 22, 2023 to:

Lewis Brooks McKenzie
706 W. 4th Street
Clarksville, TX 75426
Phone:972-837-5678
Email: lbmtcu@gmail.com

*Plaintiff Pro Se*

                                          */s/ Martin Arroyo Jr.*
                                          **MARTIN ARROYO JR.**
                                          Assistant Attorney General