UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

Cause No.: 4:23-cv-00371-O-BP

| | |
|---|---|
| LEWIS BROOKS MCKENZIE,<br>    Plaintiff,<br><br>v.<br><br>STATE OF TEXAS, *et al.*,<br>    Defendants. | ) <br>) <br>) FORMAL DEMAND FOR JURY TRIAL<br>) <br>) CONSTITUTIONAL CHALLENGES<br>) <br>) INJUNCTIVE RELIEF REQUESTED |

## Plaintiff's Response Brief to Defendant Texas' Motion to Remand

Comes now Plaintiff, Lewis Brooks McKenzie, responding to and also complaining about Defendant Texas' motion to remand as either gross negligence or fraud upon the Court by counsel's fundamentally egregious misrepresentations of this case, whether intentional or not, by providing the following Brief in support to refocus the Court's proper understanding, thusly:

TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 01

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 02

Argument

The True Nature of This Removal is Facial Challenges . . . . . . . . . . . . . . . . . . . . . . . . . . . . 02

This Action Properly Included Racial Inequality Allegations . . . . . . . . . . . . . . . . . . . . . . . . 06

The State of Texas is the Primary Defendant Party Herein . . . . . . . . . . . . . . . . . . . . . . . . . 07

Abstention Doctrines Do Not Apply to Facial Challenges . . . . . . . . . . . . . . . . . . . . . . . . . . 08

This Action Includes Separate, Original Jurisdiction Claims . . . . . . . . . . . . . . . . . . . . . . . . 17

Summary and Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1

TABLE OF AUTHORITIES

Federal Cases
*Ankenbrandt v. Richards*, 504 U.S. 689 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 15
*D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) . . . . . . . . . . . .  11, 12
*Gross v. Dannatt*, 736 F. App'x 493 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 16
*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 43 L.Ed.2d 482, 95 S.Ct. 1200 (1975) . . . . . . . .  13, 14
*Johnson v. Mississippi*, 421 U.S. 213, 421 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  07
*Judice v. Vail*, 430 U.S. 327 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13
*Lance v. Dennis*, 546 U.S. 459 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
*May v. Morgan County*, 878 F.3d 1001 (11th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986) . . . . . . . . . .  13
*Rooker v. Fid. Tr. Co.*, 263 U.S. 213 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
*Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) . . . . . . . . . . . . .  09
*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 134 S.Ct. 584 (2013) . . . . . . . . . . . . . .  12
*Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) . . . . . . . . . . . . .  14
*Troxel v. Granville*, 530 U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000) . . . . . . . . . . . . . .  09

Federal Statutes
15 USC § 1673 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
28 USC § 1443 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *passim*
42 USC § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  07
42 USC § 2000b-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  07

Texas Law
TX Const., Art. 4, Sec. 22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  07
TX Gov't Code, Chp. 402, Sec. 402.021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  07

[ARGUMENT BEGINS]

THE TRUE NATURE OF THIS REMOVAL IS FACIAL CHALLENGES

    The true nature of this case is not at all what Defendant Texas has falsely and/or negligently alleged. This federal case is not about my own personal state case, *per se*, but exists in the nature of a quasi-class action lawsuit, focused narrowly upon direct facial challenges to state statutes which unconstitutionally impact the rights of citizen victims all across the State of Texas. The only reason my personal case even gets mentioned, at all, is solely for legal standing purposes, and representative of the exact same common "class" claims that all such Texas victims suffer.

Counsel for Defendant Texas, Mr. Arroyo, filed a motion to remand (Dkt. #22), in which he has egregiously misrepresented both the facts and the law of this federal action, and by which he has fundamentally and materially misrepresented regarding the very nature of this federal case.

The summary and nature of Mr. Arroyo's motion to remand fraudulently misrepresents that this Plaintiff has filed Section 1443 removal in attempt to "appeal" or "review" or "collaterally challenge" and/or "modify" *one or more particular state court judgments* within this Court, whether that be a state court judgment regarding child custody, or child support, parenting time, and/or any other ancillary state court judgment type bootstrapped to the child custody judgment.

Mr. Arroyo misuses that fundamental mischaracterizing of the very nature of this case, as false reasoning into proffering that various abstention doctrines should apply, but they do not.

Mr. Arroyo's motion to remand fraudulently misrepresents that this Plaintiff has filed Section 1443 removal so as to "appeal" or "review" or "collaterally challenge" and/or "modify" *one or more particular state court judgments* within this federal district Court, i.e., Mr. Arroyo has falsely alleged that this Plaintiff seeks for a federal court to act like a state court in either issuing and/or modifying one or more particular domestic relations orders, and under those same fraudulent allegations, Mr. Arroyo then further proceeds to frivolously argue about abstention doctrines like *Rooker-Feldman*, *Younger*, and the domestic relations exception, so as <u>to falsely induce, trick and deceive this Court</u> into believing that such abstention doctrines apply herein.

NOTHING could be further from the truth.

Pursuant to his well-established Rule 11 due diligence duties, Mr. Arroyo was already familiar with Plaintiff's removal <u>Petition-Complaint</u> (Dkt. #1) and all original filings, before ever submitting his motion to remand on behalf of Defendant Texas, and hence Mr. Arroyo *already knew prior to his filing* that:

a) NOWHERE within *any* of Plaintiff's pleadings or other filings is there ever named any *particular* state court order (save only the most recent state court event and that only incidentally as required by law for the simple purpose of showing *timely* removal);

b) NOWHERE within *any* of Plaintiff's pleadings or other filings is there ever any type or kind or form of discussion or narrative about any *particularly* named state court order;

c) NOWHERE within *any* of Plaintiff's pleadings or other filings is there ever any type or kind or form of argument – either for or against – any *particular* state court order;

d) NOWHERE within any of Plaintiff's pleadings or other filings is there ever requested any form or kind of relief regarding any *particular* state court order;

e) hence, NOWHERE within any of Plaintiff's pleadings or other filings is there even the remotest suggestion of seeking to "appeal" or to "review" or to "collaterally challenge" and/or to "modify" *any particular state court judgment* within this federal Court; and,

f) so also, Mr. Arroyo already and clearly knew that Plaintiff had never challenged any *particular* state court order in this removal action, and he therefore also knew that his representations herein to the direct contrary were willfully and intentionally fraudulent, including knowing that his named abstention doctrines do not apply to this removal.

Pursuant to his Rule 11 due diligence duties, Mr. Arroyo was quite familiar with Plaintiff's removal Petition-Complaint (Dkt. #1) and all original filings, before ever submitting his motion to remand on behalf of Defendant Texas, and hence Mr. Arroyo *already knew prior to his filing* that:

a) **the very first sentence** of said Petition-Complaint (Dkt. #1, at 1) sets overall tone by clearly stating: "… and by formal facial challenges raised against unconstitutional state statutes upon the various federal questions involved, does …" (emphasis in original);

4

b) page 2 of said <u>Petition-Complaint</u> reinforces: "this particular state case *example* of the *common* criminality evidenced *in all similar Texas cases* to intentionally violate the same fundamental rights, and the same willful criminality of Defendants in this instant case gives me *legal standing* to raise and bring the *formal facial ("constitutional") challenges against repugnant state statutes that automatically violate every such litigant's fundamental rights at their very inception*." (emphases added);

c) page 4 of said <u>Petition-Complaint</u> clarifies: "Section 1443 removals are *focused* actions, and the direct gravamen and primal gist of every Section 1443 removal is – and must be, for validity – *direct constitutional challenge(s) against one or more state statutes alleged to be constitutionally repugnant on their faces*, as here, hence the formal such <u>Notice of Constitutional Questions</u> contemporaneously filed…." (emphases added);

d) page 11 of said <u>Petition-Complaint</u> reinforces again: "During all materially relevant times herein, all Defendants absolutely knew *the entire "family court" case was wholly <u>void without ever having even the first iota of actually valid jurisdiction</u>*..." (emphases added);

e) page 11 of said <u>Petition-Complaint</u> reinforces yet again: "During all materially relevant times herein, all Defendants absolutely knew that *each of said such filings and that each child support order <u>in said void case</u> were/are legal nullities*, except *each is proof of yet another separate criminal act by them*." (emphases added);

f) page 14 of said <u>Petition-Complaint</u> clearly expounded again: "Defendant State of Texas is the sole and proper party, by and through its duly elected Attorney General, to engage this matter in discussion and any *defense of its own state statutes being facially challenged herein*. *See* the formal <u>Notice of Constitutional Questions to Texas State</u>

5

Statutory Schemes filed … the Attorney General of the State of Texas upon all ***matters clearly affecting the public interest as a whole and also statewide***" (emphases added);

g) this Plaintiff's Notice of Constitutional Questions to Texas State Statutory Schemes (Dkt. #5) is clearly and obviously *a formal constitutional challenge to state statutes*;

h) this Plaintiff's Certificate of Interested Persons and Entities (Dkt. #4) clearly goes well beyond just merely listing persons involved *in only the instant state case* to list various persons and entities that are regarding **ALL such similar family court cases** across the ENTIRE State of Texas, *because this Plaintiff's Section 1443 removal action makes constitutional challenges to Texas' child custody statutes that affect the **entire** State*;

i) and so also, Mr. Arroyo already and clearly *knew* that Plaintiff had only challenged the *entire* state family court system within this removal action, vis-à-vis the formal facial constitutional challenges raised against Defendant Texas' child custody statutes, and Mr. Arroyo therefore also *knew* that his representations herein to conceal same were willfully and intentionally fraudulent with intent to blind the Court and obstruct justice.

This federal case is not about my own personal state case, *per se*, but exists in the nature of a quasi-class action lawsuit, focused narrowly upon direct facial challenges to state statutes which unconstitutionally impact the rights of citizen victims all across the State of Texas.

THIS ACTION PROPERLY INCLUDED RACIAL INEQUALITY ALLEGATIONS

Directly contrary to Mr. Arroyo's false assertions, within the original removal petition itself, I actually *did* formally, specifically and duly allege complaining facts about racial discrimination ("racial inequality") occurring directly within the case context (Dkt. #12, at 12), as properly valid for Section 1443 removal cases.

Further directly contrary to Mr. Arroyo's false assertions, within the original removal petition itself, I actually **did** formally, specifically and duly cited to applicable federal statutes that prohibit such racial discrimination (42 USC §§ 1981 and 2000b-2). See Dkt. #1 at 37.

Accordingly, and once again contrary to Mr. Arroyo's false assertions, by the original removal hybrid petition-complaint itself, I **had** already satisfied the established elements to proceed with Section 1443 removal jurisdiction, namely that I *had* raised allegations of racial inequality, that I *had* further raised those claims under a federal law "*providing for specific civil rights stated in terms of racial equality*" (again, 42 USC §§ 1981 and 2000b-2), and that I *had* further also shown the exception for manifest expression of state law in demonstrating that "`an equivalent basis could be shown for an equally firm prediction that the defendant would be 'denied or cannot enforce' the specified federal rights in the state court`" *Johnson v. Mississippi*, 421 U.S. 213, 421 (1975).

Hence, I *have*, in fact, properly and sufficiently alleged a valid Section 1443 removal claim.

<u>THE STATE OF TEXAS IS THE PRIMARY DEFENDANT PARTY HEREIN</u>

Mr. Arroyo's false assertion that the State of Texas is "not a party" to this action is, indeed, laughable at best. Indeed, the State of Texas, vis-à-vis the Texas Attorney General, is the ***only*** lawful party allowed and authorized to defend the constitutionality of its own state statutes.

Again, facial challenges were raised herein below against Defendant Texas' state statutes, and Mr. Arroyo clearly knows, by virtue of his employment, that ***only*** the TX-AG may defend the constitutionality of Texas state statutes, and that the TX-AG also has a duty to so defend. *See*, e.g., TX Const., Art. 4, Sec. 22, and TX Gov't Code, Chp. 402, Sec. 402.021.

There can be no reasonable question that *not only* is Defendant Texas a party herein, but also that Defendant Texas is the ***primary*** defendant party herein.

## ABSTENTION DOCTRINES DO NOT APPLY TO FACIAL CHALLENGES

Because this is a Section 1443 removal, its primary crux is the required-included (one or more) facial challenge(s) to given state statute(s). *See* again, the formal Notice of Constitutional Questions to Texas State Statutory Schemes filed herein (Dkt. #5).

Abstention doctrines do not apply to Section 1443 removal, *as the federal statute itself clearly provides for direct intervention into the given state case matters*, precisely to determine whether or not federal removal jurisdiction exists due to automatic rights violations by said state statutes.

Nevertheless, the undersigned Plaintiff will still address Defendant Texas' off-point and frivolous arguments about abstention doctrines.

Mr. Arroyo fraudulently misrepresented that the *Rooker-Feldman* doctrine (technically, it is a "preclusion" doctrine and not actually an "abstention" doctrine) applies to this case, but that is only based on Mr. Arroyo's other fraudulent misrepresentation that one (1) or more *particular* state court *orders* have ostensibly been challenged herein. Again, no such situation exists herein.

Mr. Arroyo also fraudulently misrepresented that the *Younger* abstention doctrine applies to this case, but *Younger* **only** applies to three (3) very narrow types of cases, including state criminal prosecutions, state quasi-criminal enforcement actions, and state cases regarding state executive and/or state legislative powers, none of which situations apply herein, and moreover, there are three (3) exceptions to *Younger* abstention, and this case fits ***all*** three (3) exceptions.

Mr. Arroyo also fraudulently misrepresented that the "domestic relations exception" applies to this case, but the "domestic relations exception" ***only*** applies (sometimes) in *diversity* cases, and since this case is not a diversity case at all, there is not even any possibility of application.

Further, abstention/avoidance/preclusion doctrines do **not** apply to Section *1443* removal.

Abstention/avoidance doctrines *sometimes* apply within the circumstances of a given state court case, but <u>not</u> always… Mr. Arroyo has fraudulently misrepresented that ALL federal suits involving state domestic relations cases are barred by the domestic relations exception and/or other such abstention doctrines, but Mr. Arroyo already *knew* that this Plaintiff's <u>Memorandum of Law Clarifying Established Federal Jurisdiction</u> is chock full of numerous federal case victories by parents upon all manner of state "domestic relations" case issues, hence he also *knew* that such numerous victories in federal court *could never have happened*, in the first place, if his own fraudulent misrepresentations, i.e., his false allegation that domestic relations cases are ***always*** barred from federal court review… were actually true.

Indeed, the majority of said same above <u>Memorandum</u> federal case victories included *express* denials of applicability of abstention doctrines, while in all of the rest, it is *necessarily* implied.

Moreover contrary to Mr. Arroyo's ongoing false and fraudulent misrepresentations, the United States Supreme Court has made it very clear beyond question that simply because a federal case involves issues from a domestic relations case that is no moment to question federal jurisdiction.

"Parents have a fundamental right to the custody of their children, and the deprivation of that right effects a cognizable injury. *See* <u>Santosky v. Kramer</u>, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397, 71 L. Ed. 2d 599 (1982)." <u>Troxel v. Granville</u>, 530 U.S. 57, 68-69, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000). Again, the [unlawful] deprivation of a natural parent's child custody by state court action DOES effect a cognizable injury within the federal courts, i.e., within this Court, *and so on that ground alone*, this Plaintiff has already "well pled" a cognizable action herein.

Further, the U.S. Supreme Court expressly ruled, in <u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 700 (1992), that federal tort cases, simply because they involve state domestic relations matters, are **not** excluded from federal court jurisdiction:

```
An examination of Article III, Barber itself, and our cases since
Barber makes clear that the Constitution does not exclude domestic
relations cases from the jurisdiction otherwise granted by statute
to the federal courts.
```
(emphasis added)

The "domestic relations exception" is an exception made for ***diversity*** jurisdiction cases, <u>Ankenbrandt v. Richards</u>, 504 U.S. 689 (1992), which <u>this case is clearly not</u>, but the holding of <u>Ankenbrandt</u> cited just above necessarily covers any and all abstention/avoidance doctrines.  The <u>Ankenbrandt</u> Court went further: " `[t]`**he District Court erred in abstaining from exercising jurisdiction**" *Id*. at 690. (emphasis added)

In <u>Ankenbrandt</u>, the United States Supreme Court clearly explained in full:

```
The Barber Court thus did not intend to strip the federal courts of
authority to hear cases arising from the domestic relations of
persons unless they seek the granting or modification of a divorce
or alimony decree."
```
(emphases added)  The Court further added: "`By concluding,
as we do, that the domestic relations exception encompasses only`
cases involving **the issuance of a divorce, alimony, or child custody decree**, `we necessarily find that the Court of Appeals erred by
affirming the District Court's invocation of this exception.` (emphases added)

### [*Rooker-Feldman* does <u>not</u> apply herein]

Though one might not always know it from reading federal cases, *Rooker-Feldman* is a narrow jurisdictional doctrine.  It simply establishes that a party who loses a case in state court cannot *appeal* that loss in a federal district court.  This is a straightforward enough rule, and the Supreme Court has held the line without hesitation for nearly a century.

An overly inflated view of the doctrine, widely shared though it may have been, was actually a misunderstanding – one that the Supreme Court has stepped in to correct.

10

The Supreme Court's decision in <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u> restored *Rooker-Feldman* to its original boundaries. 544 U.S. 280 (2005). The doctrine occupies `"narrow ground"` and is `"confined to cases of the kind from which the doctrine acquired its name"` – that is, <u>Rooker</u> and <u>Feldman</u>. *Id*. at 284; <u>Rooker v. Fid. Tr. Co.</u>, 263 U.S. 213 (1923); <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983). Those cases held that state court litigants do not have a right of *appeal* in the lower federal courts; they cannot come to federal district courts `"complaining of injuries caused by state-court` **`judgments`** `rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."` <u>Exxon Mobil</u>, 544 U.S. at 284. (emphases added)

Only when a losing state court litigant calls on a district court to modify or `"overturn an injurious state-court` **`judgment`**`"` should a claim be dismissed under *Rooker-Feldman*; district courts do not lose subject matter jurisdiction over a claim `"simply because a party attempts to litigate in federal court a matter previously litigated in state court."` <u>Exxon Mobil</u>, 544 U.S. at 292–93. (emphasis added) Nor is *Rooker-Feldman* `"simply preclusion by another name."` <u>Lance v. Dennis</u>, 546 U.S. 459, 466 (2006).

<u>Exxon Mobil</u> was a much-needed corrective, and the holdings of federal Circuit courts have since retreated to *Rooker-Feldman's* narrow boundaries, and have rested on *Feldman's* meaning: a `"claim that at its heart challenges` **`the state court decision itself`**— and **`not the statute or law which underlies that decision`**—falls within the doctrine because it 'complains of injuries caused by state-court **`judgments`**' and 'invites review and rejection of **`those judgments.`**'" <u>May v. Morgan County</u>, 878 F.3d 1001, 1005 (11th Cir. 2017) (alterations adopted) (quoting <u>Exxon Mobil</u>, 544 U.S. at 284). (emphases added)

11

Indeed, the Fifth Circuit has limited *Rooker-Feldman* even *further* than the <u>*Exxon Mobil*</u> ruling. In <u>*Gross v. Dannatt*</u>, 736 F. App'x 493 (5th Cir. 2018), … which *was* a diversity case … the Fifth Circuit *actually* held, discussing both of the alleged bars to jurisdiction, i.e., the domestic relations exception and *Rooker-Feldman*:

```
Contrary to the district court's conclusion, neither applies here.
```
<u>*Gross*</u>, at 495. (emphasis added)

and,

```
Accordingly, this court has limited the application of Rooker-
Feldman to those cases in which "a party suffered an adverse final
judgment rendered by a state's court of last resort." Ill. Cent. R.
Co. v. Guy, 682 F.3d 381, 390 (5th Cir. 2012).  Many of our sister
circuits have reached the same conclusion. Gross, at 495.
```
(emphases added)

and,

```
The district court's reliance on the domestic relations exception
was similarly misplaced. Gross, at 496.
```

*Rooker-Feldman* does NOT apply to this case because this Plaintiff is not challenging any merits of any *particular state court **judgment***, but instead this Plaintiff is facially challenging <u>the very existence of the state court case</u>. Again, the Petition-Complaint does NOT name or argue about any *particular state court **judgment***, but all claims are general in nature as "Class claims" of all similarly-situated citizens defrauded by inception of <u>facially unconstitutional state statutes</u>.

### [*Younger* does <u>not</u> apply herein]

Just like the formerly out-of-control, expansive usage of *Rooker-Feldman*, the United States Supreme Court also recently pulled back the reins on similar out-of-control usage of *Younger*.

In <u>*Sprint Communications, Inc. v. Jacobs*</u>, 571 U.S. 69, 134 S.Ct. 584 (2013), the Supreme Court decisively ruled to dramatically limit the application of *Younger*. See <u>*Sprint*</u>, at 588:

```
We reverse the judgment of the Court of Appeals. In the main,
federal courts are obliged to decide cases within the scope of
federal jurisdiction. Abstention is not in order simply because a
pending state-court proceeding involves the same subject matter. New
```

12

> *Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (NOPSI) ("[T]here is no doctrine that ... pendency of state judicial proceedings excludes the federal courts."). (emphasis added)
>
> *Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution. This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions, see *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), or that implicate a State's interest in enforcing the orders and judgments of its courts, see *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). We have cautioned, however, that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not "refus[e] to decide a case in deference to the States." *NOPSI*, 491 U.S., at 368, 109 S.Ct. 2506.
>
> **"[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."** *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)). (emphasis added)

*Younger* **only** applies (and *only sometimes*) to: (1) state criminal prosecutions; (2) state civil proceedings that are "akin" to criminal prosecutions; and, (3) "extraordinary" situations of state judicial court proceedings regarding disputes over state executive and/or legislative authority.

The doctrine *had* been extended to state civil proceedings in aid of and closely related to state criminal statutes (*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 43 L.Ed.2d 482, 95 S.Ct. 1200 (1975)), administrative proceedings initiated by a state agency (*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 n.2, 91 L. Ed. 2d 512, 106 S. Ct. 2718 (1986)), or certain situations where the State has jailed a person for contempt of court (*Judice v. Vail*, 430 U.S. 327 (1977)), but the Supreme Court's ruling in *Sprint*, *supra*, has curtailed and limited even those.

What matters *now*, after *Sprint*, is that the instant state court case is NOT a criminal case, and it does **not** resemble the state enforcement actions the Supreme Court has found appropriate for

13

*Younger* abstention. It is <u>not</u> "akin to a criminal prosecution." <u>Huffman</u>, 420 U.S., at 604, 95 S.Ct. 1200. <u>Nor</u> was it initiated by "the State in its sovereign capacity." <u>Trainor v. Hernandez</u>, 431 U.S. 434, 444, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). And the instant state court case is also obviously <u>not</u> a court case filed by Texas executive or legislative authorities to dispute power.

And, even ***if*** there was any remote consideration for *Younger* abstention, there are three (3) exceptions to *Younger* application, and this situation coincidentally fits under all three (3) of the same exceptions. These three principal exceptions include: (a) patently unconstitutional statutes, (b) the lack of an adequate state forum, and/or (c) bad faith and/or harassment.

Again, we are here, *not* about merits of any particular state court *judgment*, but due to facially unconstitutional statutes that are void *ab initio* for totally false and illegal deprivation of citizens' federal constitutional rights upon the very inception of basing or processing any court case upon such void statutes. The fact that officers of the state courts themselves are raking in boatloads of illicit pecuniary benefits right off the backs of these same cases (defrauding the United States for Title IV-D reimbursements, i.e., false claims against the federal government, i.e., False Claims Act grounds), let alone that the same ***facially*** *unconstitutional* situation has incredibly persisted for decades already.., in spite of some of "the brightest legal minds" passing upon literally tens of thousands of appeals of such cases, and yet <u>not a single once</u> did *even one* higher state court judge notice that a litigant parent's constitutional rights had never been taken away under proper due process as a fundamental prerequisite to whatever else the case claimed it was about, clearly demonstrate together the total "lack of an adequate state forum" and utter futility to even suggest that one should simply ask the bad guys to stop being bad. Hence, all three (3) exceptions apply.

Indeed, this Plaintiff has already and duly alleged the obvious fact – that state court officers, since they also *know* that in all CPS ("child protection services") cases (termination of parental

14

rights cases) they must "remove" or "terminate" the given parent's pre-existing constitutional rights of child custody, then they already *also know* that they (state court officers) are literally stealing and defrauding away the very exact same pre-existing rights from all natural parents within (divorce-and-similar-with-kids-involved) cases without ever once even bothering with any pre-deprivation due process, and that fact goes well beyond showing mere "bad faith and harassment" within the instant state case and regarding all such similarly-situated cases.

*Sprint* narrowed application of *Younger*. The instant state case is not criminal, nor does it fall under any appropriate application, and even *if* it did, the situation fits all three (3) exceptions.

Moreover, *Younger* does NOT apply to this case because this Plaintiff is not challenging any merits of any *particular state court judgment*, but instead this Plaintiff is facially challenging the very existence of the state court case. Again, the Petition-Complaint does NOT name or argue about any *particular state court judgment*, but all claims are general in nature as "Class claims" of all similarly-situated citizens defrauded by inception of facially unconstitutional state statutes.

### [the *domestic relations exception* does not apply herein]

The "domestic relations exception" applies **only** to diversity cases. *Ankenbrandt v. Richards*, 504 U.S. 689 (1992).

Again, in *Gross*, … which *was* a diversity case … the Fifth Circuit *actually* held, discussing both of the alleged bars to jurisdiction, i.e., the domestic relations exception and *Rooker-Feldman*:

> Contrary to the district court's conclusion, **neither applies here**. *Gross*, at 495. (emphasis added)

and,

> The district court's reliance on the domestic relations exception was similarly misplaced. *Gross*, at 496.

This federal court Plaintiff has never claimed any diversity jurisdiction, at any time or anywhere, and the parties involved do not constitute any diversity situation, hence this case does not fall under diversity jurisdiction whatsoever.

Accordingly, the "domestic relations exception" has absolutely no application herein.

**[*abstention* and similar doctrines simply do <u>not</u> apply to Section 1443 removal]**

The various kinds of "abstention" and similar doctrines, such as *Rooker-Feldman*, *Younger*, and so many others, are all and always about the single question of *whether or not to "intervene" into a state court case*. The question is always: whether or not the given federal court should "abstain" from "intervening" (or should "avoid" "intervening") into the given state case, and the answer to that question is variable to the facts and law at play in each unique case.

Within any random federal lawsuit that has a nexus unto a given state case, or even within a "normal" removal filed under Section *1441* or under some of its seven sibling statutes, any particular abstention doctrine ***may or may not*** *apply*, depending upon the facts and law therein.

However, abstention-avoidance-preclusion doctrines and such related theories <u>cannot</u> and <u>never</u> apply to Section *1443* removal, which is purely in the nature of a "class action" (using only common "class claims") and that further tailored narrowly to just raising facial challenge(s) to one or more state statutes. Section 1443 removal is not about any particular state court judgment or judgments, and it is not about the instant state court case *per se*, but Section 1443 removal focuses on pure allegations that state statutes unconstitutionally create void *ab initio* state cases and thereby automatically violate every citizens' established federal constitutional rights and/or other federal rights from the very original moments of creating such abhorrently void state cases.

It would not be logical, in the least, to wildly suggest, in this situation where the State has enacted facially unconstitutional statutes, and the State's courts have routinely ignored the very

16

same obvious constitutional infirmities for decades, clearly demonstrating the state courts are inadequate forums, and it is patently unreasonable to suggest asking bad guys to stop being bad, that the Court magically approve of deferring jurisdiction right back to the problem challenged, let alone that the Court derelict its **very well established** jurisdiction to hear facial challenges.

Section 1443 is Congress' enactment of their stated purpose – "to `**ensure**` `an adequate forum in the federal courts for raising constitutional challenges to state statutes.`" (emphasis added) This is also why Congress gave special rights to review on appeal from wayward remands of Section 1443, when "normal" removals have no such right.

While abstention, avoidance, preclusion and other such doctrines revolve around the basic question of whether or not to "intervene" into a state court case, Section 1443 is the direct and statutory authority for the federal court to do just exact that, allowing and authorizing the federal court to **intervene** in a state court case, in order to *ensure* an adequate forum for said challenges.

Such doctrines are limited to possible application or not in regards to *a particular, individual state court case*, but Section 1443 removal is not about any particular case – it is strictly about that entire *type* of state court case, about *all* such similarly-situated cases, about the void statutes.

THIS ACTION INCLUDES SEPARATE, ORIGINAL JURISDICTION CLAIMS

Mr. Arroyo also fraudulently misrepresents that Section 1443 removal is the ***only*** federal cause of action that has been filed, raised and is now at bar within this Track 3 complex litigation case, as false reasoning to trick and deceive this Court into ignoring **all** the other federal causes already also raised herein at the outset.

Mr. Arroyo "conveniently" forgets to mention that the common "Class claims" presented by this Plaintiff are just as equally viable and valid under good faith Section 1443 removal as they are also perfectly suited for this Plaintiff's other main causes of action herein, i.e., said claims

17

under the Consumer Credit Protection Act, said claims under the False Claims Act, claims regarding discrimination in places of public accommodation, and etc.  Indeed, Mr. Arroyo appears to go to great lengths in just consistent failures to ever even mention any of those other causes, as if his fraud to mislead, trick and deceive this Court into totally ignoring all of the other federal causes of action already raised herein is in any way, shape or form ethical or lawful.

This Plaintiff's very same general and common "Class claims" – that the underlying state court case type and all similarly-situated cases are all wholly void in repugnance of the federal Constitution, are just as viable and valid for claims under the Consumer Credit Protection Act (all such child support orders are absolutely void for total lack of due process, hence unlawful and unenforceable pursuant to 15 USC § 1673(c) of the CCPA), they are just as viable and valid for purposes of claims under the False Claims Act (because all such Title IV-D child support orders are void *ab initio* and also because the state court officers themselves already knew that and yet still daily and knowingly participated in ongoing willful submissions of false Title IV-D reimbursement claims from the United States), they are just as viable and valid for purposes of claims of discrimination in places of public accommodations, and so forth and so on.

SUMMARY AND CONCLUSION

Mr. Arroyo, on behalf of Defendant State of Texas, fundamentally mischaracterized the very nature of the instant federal action.  We are NOT here to discuss any attempt to improperly use a federal court to "collaterally attack" any particular state court judgment in a single state case, but we are here in "class" nature on facial challenges to wayward state statutes of Defendant Texas.

Additionally, Section 1443 removal is NOT the only federal cause of action raised by the original pleading, but there are also separate, independent federal claims under the Consumer Credit Protection Act, the False Claims Act, and for discrimination within public facilities.

HOWEVER, the undersigned *pro se* Plaintiff hereby admits and concedes that the initial petition-complaint for removal is not the "model of clarity" by any means, and should be amended for the purposes of streamlining and clarity and convenience of the Court and parties.

Accordingly, Plaintiff requests the Court grant leave and a reasonable period of 21 days in which to amend the initial pleading herein for such purposes.

**WHEREFORE**, the Plaintiff, Lewis Brooks McKenzie, moves the Court to DENY and even STRIKE Mr. Arroyo's motion to remand filed on behalf of Defendant Texas, further grant this Plaintiff a reasonable time period of 21 days to amend *once* the complaint, and the undersigned Plaintiff also prays for all other relief that is true, lawful, just, and proper within these premises.

Respectfully submitted,

/s/ Lewis Brooks McKenzie /s/

_____
Lewis Brooks McKenzie
706 W. 4th Street
Clarksville, TX  75426
Tel:  972-837-5678
Email:  LBMTCU@gmail.com
*Plaintiff-Petitioner Party of Record*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify:  that on this _12th_ day of June, 2023, a true and complete copy of the above *Plaintiff's response to Defendant Texas' motion to remand*, by ECF and/or first class postal mail, respectively, has been duly served upon each of the following:

*(Statutory Intervenor United States)*
c/o U.S. Attorney General Merrick Garland
Office of the United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530-0001

*(Statutory Intervenor United States)*
c/o U.S. Attorney Chad E. Meacham
Office of the U.S. Attorney TXND
1100 Commerce Street, 3rd Floor
Dallas, TX  75242-1699

*(Cross-Defendant State of Texas)*
c/o Martin Arroyo Jr., SBN 24133114
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, TX  78711-2548

*(Cross-Defendant Holly Hayes)*
Holly Hayes
c/o Child Support Enforcement
2001 Beach St., STE 800
Fort Worth, TX  75103-2300

*(Counter-Defendant Kelli Marie (Rayburn) McKenzie)*
Kelli Marie (Rayburn) McKenzie
7913 Hannah Street
Plano, TX 75025-6203

/s/ Lewis Brooks McKenzie /s/
_____
Lewis Brooks McKenzie